

**SO ORDERED.**

**SIGNED this 24 day of February, 2012.**

_____
                        **Stephani W. Humrickhouse**
                        **United States Bankruptcy Judge**

_____

                **UNITED STATES BANKRUPTCY COURT**
                **EASTERN DISTRICT OF NORTH CAROLINA**
                        **RALEIGH DIVISION**

IN RE:                                                          CASE NO.

CYRUS MEAD IV,                             10-09630-8-SWH

     **DEBTOR**

        **ORDER REOPENING CASE, FINDING CONTEMPT**
     **OF DISCHARGE INJUNCTION, AND IMPOSING SANCTIONS**

       The matter before the court is the chapter 7 debtor's motion to reopen the bankruptcy case and for the court to find Madeleine M. Ward in contempt for violating the discharge injunction by reinstating her federal lawsuit against the debtor in Illinois after the discharge injunction was imposed and his case closed. A hearing took place in Raleigh, North Carolina, on January 4, 2012. At the conclusion of the hearing, the court announced that it would take the matter under advisement. The court requested that counsel provide it with supplemental briefs on the effect of the discharge injunction on *in rem* and *in personam* claims, and both parties have done so.

                                                                   Background

       The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on November 22, 2010. Ms. Ward, the debtor's former fiancée, was included on Schedule F as a creditor with a disputed claim in an unknown amount. The statement of financial affairs listed a

pending civil lawsuit brought by Ms. Ward against the debtor in the United States District Court for the Northern District of Illinois, Eastern Division. The civil proceeding, Ward v. Mead, (Case No. 08-5581) (hereinafter referred to as the "Illinois Lawsuit"), was filed by Ms. Ward in 2008, and was dismissed on July 26, 2011 without prejudice.

The Illinois lawsuit arose in the context of a property dispute in the state of Illinois. Ms. Ward owned a home in Naperville, Illinois for several years, but in 2005, her ownership was contested in Illinois state court by a third-party. In order to settle the dispute, the debtor purchased the third-party's interest in the home, and Ms. Ward relinquished her claim in the home at that time to allow him to acquire free and clear title. The debtor agreed that the home would be re-titled in Ms. Ward's name if he died or their relationship ended, and a written agreement containing those terms dated May 13, 2005, was filed with the registrar of deeds in Illinois. The written agreement did not contain any provisions detailing how the reconveyance was to be accomplished. The relationship between the debtor and Ms Ward ended and she initially filed the Illinois Lawsuit to enforce the agreement. Ms. Ward sought five forms of relief in the Illinois Lawsuit: Count I sought specific performance of the written agreement; Count II sought recovery against the debtor for breach of contract; and Counts III through V sought claims against the debtor for conversion of specific items of personal property of significant value that Ms. Ward claimed to own.

During the debtor's chapter 7 bankruptcy, on April 4, 2011, Ms. Ward filed an adversary proceeding against the debtor, seeking denial of the debtor's discharge for his alleged failure to disclose transfers of money that occurred within one year of the petition. Ms. Ward's attorney was allowed to withdraw from the adversary proceeding on July 26, 2011, the complaint was dismissed

2

on August 11, 2011, and the adversary proceeding was closed on August 26, 2011. The debtor received his discharge on April 12, 2011, and his chapter 7 case was closed on August 29, 2011.

On September 16, 2011, Ms. Ward filed a *pro se* motion in the Illinois district court to reinstate the Illinois Lawsuit. The Illinois district court denied Ms. Ward's motion to reinstate her lawsuit on October 4, 2011. On October 5, 2011, the debtor filed this motion to reopen his chapter 7 case and to hold Ms. Ward in contempt of the discharge injunction. The debtor contends that Ms. Ward's filing of her motion to reinstate the Illinois Lawsuit was a willful violation of the injunction that arose as a result of the debtor's discharge in bankruptcy. Ms. Ward counters that her motion in district court did not violate the discharge injunction because she had an equitable claim to the property, and the discharge injunction does not bar *in rem* proceedings.

## Discussion

I.    Motion to Reopen the Case

Section 350(b) of the Bankruptcy Code permits a bankruptcy court to reopen a case which has been closed in order to administer assets, accord relief to the debtor, or for other cause. 11 U.S.C. § 350(b). The decision to reopen a closed case is within the court's discretion and depends upon the circumstances of the particular case. Hawkins v. Landmark Fin. Co. (In re Hawkins), 727 F.2d 324, 326 (4th Cir. 1984). To establish grounds for a motion to reopen a case, the moving party bears the burden of proof. In re Lee, 356 B.R. 177, 180 (Bankr. N.D. W. Va. 2006) (citing In re Cloninger, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997). The court is satisfied that it is appropriate to reopen the debtor's closed case for the limited purpose of giving the debtor the opportunity to present his claim that Ms. Ward violated the discharge injunction by seeking to reinstate the Illinois Lawsuit against him. E.g., In re Schneider, 126 B.R. 626, 628 (Bankr. M.D. Fla. 1991) (court

3

allowed debtor to reopen a closed chapter 7 case for the purpose of considering debtor's motion for a finding of contempt against a creditor who filed suit in state court after discharge).

II.     Civil Contempt

The discharge injunction set forth in 11 U.S.C. § 524 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such debt is waived." 11 U.S.C. § 524(a)(2). A violation of the discharge injunction may be redressed by a bankruptcy court under its civil contempt power. 11 U.S.C. § 105(a); In re Bock, 297 B.R. 22, 29 (Bankr. W.D.N.C. 2002) ("[D]ischarge is a Bankruptcy Court order, and as such, most courts treat its violation as civil contempt."); Burd v. Walters, 868 F.2d 665 (4th Cir. 1989) (holding that bankruptcy court has civil contempt powers to carry out the provisions of the Code); In re Bruce, 2000 WL 33673773 (Bankr. M.D.N.C. 2000) ("Although section 524 does not explicitly authorize monetary damages for violation of a discharge injunction, the court may award actual damages pursuant to the statutory contempt powers set forth in 11 U.S.C. § 105.") The Court of Appeals for the Fourth Circuit articulated the standard to establish civil contempt in Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (internal quotations omitted), as follows:

> 1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.

Each of these elements must be established by clear and convincing evidence. Ashcraft, 218 F. 3d at 301 (construing Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-06 (E.D.Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)).

In addition to the four Ashcraft factors, bankruptcy courts in this circuit, including this court, have increasingly looked to whether a creditor's violation of the discharge injunction was willful. E.g., In re Adams, 2010 WL 2721205 at *3 (Bankr. E.D.N.C 2010); In re Morton, 2011 WL 5509196 *3 (Bankr. E.D.N.C. 2011) (debtors failed to carry burden of proving willful violation of automatic stay, and failed to establish civil contempt); In re Kirkbride, 2010 WL 4809334 (Bankr. E.D.N.C. 2010).  While it is not clear that willfulness is an element to contempt required in the Fourth Circuit, the rule established in the Eleventh Circuit in In re Hardy, 97 F.3d 1384 (11th Cir. 1996) "has found increasing acceptance by other courts, including courts in this circuit." Adams, 2010 WL 2721205 at *4 (citing Almond v. Ford Motor Co. (In re Almond), 2007 WL 1345224, at *5 (Bankr. M.D.N.C. 2007)).   Pursuant to Hardy and the decisions that follow it, the burden of proving that the creditor's violation was "willful" can be met by a showing that "the creditors knew that the discharge injunction was invoked and intended the act which violated the injunction.'" In re Adams, 2010 WL 2721205 at *3 (citing In re Dendy, 396 B.R. 171, 178 (Bankr. D.S.C. 2008)). In contrast to the standard for civil contempt, a willful violation of the discharge injunction must be proven by the lower preponderance of the evidence standard.  In re Cherry, 247 B.R. 176, 188 n. 18 (Bankr. E.D.Va. 2000).

Out of the five elements to be proven, the only two elements in controversy are whether there was a violation of the discharge injunction and whether that violation was willful.  It is established that Ms. Ward had actual or constructive knowledge of the debtor's receipt of his discharge on April 12, 2011, prior to the dismissal of the adversary proceeding.  The discharge is a decree in the debtor's favor, and Ms. Ward, in reinstating the Illinois Lawsuit against the debtor, caused the debtor

to suffer harm in that he was forced to reopen his bankruptcy case and incur additional attorneys' fees to insure that the behavior did not continue or was not repeated.

To determine whether Ms. Ward's attempt to reinstate the Illinois Lawsuit constitutes a violation of the discharge injunction, the court must review the effects of the discharge. A bankruptcy discharge, of course, extinguishes "the personal liability of the debtor with respect to any debt." 11 U.S.C. § 524(a)(1). The Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). The Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Therefore, a discharge extinguishes the debtor's personal liability on his creditor's claims. However, a discharge does not extinguish a creditor's right to seek a claim *in rem*. Coastal Fed. Credit Union v. Hardiman, 398 B.R. 161, 183 (Bankr. E.D.N.C. 2008) (quoting Johnson v. Home State Bank, 501 U.S. 78, 84 (1991)("[I]t is well settled that a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor *in personam* – while leaving intact another – namely, an action against the debtor *in rem*.").

The debtor listed Ms. Ward on his schedules as the holder of a disputed claim, in an unknown amount, growing out of the Illinois lawsuit. His personal liability on this claim was discharged in his bankruptcy if the claim was of the kind subject to discharge, and Illinois law determines the nature of the claim brought by Ms. Ward. The Illinois Lawsuit sought both equitable and legal relief in the form of specific performance of the terms of the agreement, recovery against the debtor for breach of contract, and recovery against the debtor for wrongful conversion of personal property. Illinois law states that "[a]n action *in rem* is considered to be taken directly against property or

6

brought to enforce a right in the thing itself." Metrobank v. Cannatello, 2012 WL 146706, *4 (Ill. Ct. of App. 2012). Ms. Ward's action sought not just to enforce her right in the property through specific performance or other equitable means, but also to seek affirmative monetary relief from the debtor – in other words, a legal remedy.

Illinois law focuses on the requirement of personal service of process in distinguishing between *in rem* and *in personam* proceedings. "[I]n a proceeding strictly *in rem*, no notice is required to be given; that in such a proceeding seizure of the *res*, or what is regarded as equivalent to seizure, is essential, and... sufficient constructive notice." Austin v. Royal League, 232 Ill. App. 1 Dist. 359, 372 (1924). For example, suits "to enforce liens or contracts relating to property, may be regarded as proceedings *in rem*, so far as they affect property in this state." Id., at 373 (citing Pennoyer v. Neff, 95 U.S. 714 (1878)). While it is unclear whether Ms. Ward was required to serve the debtor with personal service of process, the claims she brought against the debtor exceed the limited relief in equity that she could have sought without violating the discharge injunction. The fact that Ms. Ward could have brought a proceeding strictly *in rem* without violating the injunction does not mean that she can also seek legal remedies against the debtor without violating the injunction. Because Ms. Ward brought the action directly against the debtor and sought affirmative monetary relief in addition to specific performance, she violated the discharge.

The reinstatement of the Illinois Lawsuit by Ms. Ward also constitutes a willful violation of the discharge injunction. Ms. Ward intended to reinstate her claim when she filed the *pro se* motion with the Illinois district court, and she had knowledge of the discharge injunction entered in the debtor's bankruptcy case. There is therefore ample evidence that Ms. Ward's action in attempting to reinstate the Illinois Lawsuit was willful. E.g., Adams, 2010 WL 2721205 *3 (willfulness is

proven by showing creditor knew the discharge injunction was invoked and intended the act which violated the injunction). For these reasons the court finds that Ms. Ward has willfully violated the discharge injunction and is in civil contempt of a court order.

III.  Damages

A bankruptcy court has not only the inherent authority to enforce its orders, but also the statutory authority, under 11 U.S.C. § 105(a), to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. This authority encompasses the court's ability to impose sanctions as a consequence of violating the discharge injunction. In re Barbour, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987); see also In re Workman, 392 B.R. 189, 194 (Bankr. D.S.C. 2007) (citing multiple recent cases in which bankruptcy courts invoked power under §105(a) to sanction parties who violated the discharge injunction). Thus, while § 524 does not explicitly authorize an award of monetary damages for violation of the discharge injunction, damages for those violations may be awarded under §105(a). See, e.g., Workman, 392 B.R. at 195. Such sanctions may include "actual damages, attorney's fees and, when appropriate, punitive damages." In re Cherry, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000) (citing Mickens v. Waynesboro Dupont Employees Credit Union, Inc. (In re Mickens), 229 B.R. 114, 118 (Bankr. W.D.Va. 1999)).

Debtor's attorneys have provided the court with invoices totaling $4,469 related to the contempt motion. No other evidence of compensatory damages was introduced. There is insufficient evidence of the egregious conduct the Cherry court required as a basis for an award of punitive damages, and the court chooses not to impose them. Cherry, 247 B.R. at 189-90 (awarding punitive damages requires some sort of egregious conduct, malevolent intent, or clear disregard of the bankruptcy laws).

Accordingly, the debtor's motion to reopen the case is ALLOWED. The court finds Madeleine M. Ward in contempt of the discharge injunction and sanctions her for violation of the discharge injunction in the amount of $4,469. Ms. Ward is ORDERED to pay such amount no later than fourteen (14) days from the date of this order to THE JANVIER LAW FIRM, counsel for the debtor, 1101 Haynes Street, Suite 102, Raleigh, NC, 27604.

**SO ORDERED**.

**END OF DOCUMENT**